IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TOMMY BARNETT, ET AL.,          *
                                 *
             Plaintiffs,        *
                                 *
vs.                             *      No. 4:05CV01020 SWW
                                 *
BOB PARISH,  ET AL.,            *
                                 *
            Defendants.      *

**Memorandum Opinion and Order**

Before the Court are motions to dismiss filed by separate defendants.  The parties argued the

motions before the Court on December 20, 2005.  For the reasons stated below, the motions are

granted.

**Background**

According to the allegations of the complaint, plaintiffs are  heirs of Elbert and Lura Barnett

who, in the late 1960s, donated more than 250 acres of land to the Des Arc Bayou Watershed

Improvement District and the Arkansas Game and Fish Commission ("AGFC").  The land was used

to create Lake Barnett.  The Barnett heirs say the formation of the lake caused their four separate

tracts of land, totaling approximately 55 acres, to become virtually landlocked and inaccessible by

regular vehicle.  This case concerns plaintiffs' attempt to obtain easements in order to build a road

to their property along Des Arc Bayou and Lake Barnett.

According to plaintiffs, in order for them to have reasonable, all-weather vehicular access

from their respective tracts of land to a public road in the area, they must cross over and upon a part

of the lands owned by some or all of the landowner defendants.  Plaintiffs claim that for at least the

past five years, all of the landowner defendants have refused to grant plaintiffs an easement for a right-of-way for a private road to allow them access to their property.

In May 2000, plaintiffs filed a petition pursuant to Ark. Code Ann. § 27-66-401 *et seq.*, a "private road proceeding," in the County Court of White County, Arkansas, naming Hugh Durham, director of the AGFC, and landowners Leonard Howard and Richard Fritz as defendants.  Plaintiffs petitioned White County Judge Bob Parish to appoint "viewers" and to create an easement for a right-of-way for a private road from a public road to their four tracts of land. Plaintiffs filed a first amended petition in June, and in July 2000, White County retained John Bell, an attorney, to advise Judge Parish on all matters related to the private road proceeding.  Mr. Howard filed a motion for a physical examination, and in the late summer of 2000, Judge Parish, Bell, separate counsel for AGFC, plaintiffs, several other landowner defendants, and staff of AGFC undertook an informal view of the four tracts and the surrounding areas.   In December 2000, plaintiffs filed a second amended petition, adding landowners Roy Sanchez, Dick Finch, and Scott Crawford as defendants.

On December 27, 2000, Judge Parish granted motions to dismiss filed by the AGFC, Howard, and Fritz.  On January 22, 2001, plaintiffs filed a motion to reconsider and set aside that order. On February 23, 2001, plaintiffs filed a third amended petition for private road, adding landowner Bill Golla as a defendant and retaining defendants Howard, Sanchez, Finch, and Crawford.   Prior landowner defendants AGFC and Fritz were not named as parties to this proceeding. Judge Parish entered an order on April 18, 2001, appointing three "viewers," Thomas Black, Mitchell Spurlock, and Dennis Mobley, and  instructed  them to determine if plaintiffs' property was "landlocked," and if so, "the appropriate route for the road to take and the damages caused thereby."

On May 22, 2001, the three viewers, accompanied by Parish, visited the property and viewed several potential rights-of-way for the establishment of a private road from the Barnett heirs' property to a public road.  On June 5, 2001, a Report of Viewers was filed.  The report stated that according to the viewers' assessment, the property was not landlocked as a reasonable means of access exists from a state highway.  On the same day, Parish entered an order dismissing the third amended petition for a private road.

On June 15, 2001, plaintiffs filed a motion for new trial or, alternatively, for amended and additional findings of fact regarding the report of the viewers.  A few days later, after learning that attorney  Bell was a trustee of the AGFC Foundation, plaintiffs filed a statement of undisclosed conflict of interest on June 19, 2001.  On July 2, 2001, Parish denied the motion for new trial or, alternatively, for amended and additional findings of fact, and denied that a conflict of interest existed.  *See* Compl., Ex. M.

On August 1, 2001, plaintiffs mailed a notice of appeal to the White County circuit clerk, which was filed on August 6, 2001; the record was certified on August 7, 2001, and lodged in the White County Circuit Court.  Defendant landowners Howard and Crawford filed a motion to dismiss, asserting that the record had not been timely lodged in the county clerk's office.  On October 26, 2001, after a hearing, Circuit Court Judge Bill Mills granted the motion to dismiss finding the court had no subject matter jurisdiction because the record had not been timely lodged. On November 26, 2001, plaintiffs filed a notice of appeal and designation of record in the Arkansas Court of Appeals.

On October 22, 2002, the Arkansas Court of Appeals affirmed the decision of the White County Circuit Court on procedural grounds, and later denied plaintiffs' petition for rehearing.  On

November 12, 2002, plaintiffs filed a petition for review with the Arkansas Supreme Court. The petition was granted on January 9, 2003, and on June 26, 2003, the Arkansas Supreme Court affirmed the decisions of the White County Circuit Court and the Arkansas Court of Appeals. The mandate was issued on July 15, 2003. *Barnett, et al. v. Howard, et al.,* 120 S.W.3d 564 (Ark. 2003).

In the meantime, during the late summer and fall of 2002, some of the plaintiffs contacted Larry White, the then-assistant director of the Arkansas Soil & Water Conservation Commission about getting a permit to enable them to construct an all-weather vehicular crossing over Des Arc Bayou that would, according to the June 5, 2001 report of viewers, provide them with a reasonable means of access to their property from state highway 31. White arranged for another view of the property, and one of the viewers was Dennis Mobley, who had participated in the May 22, 2001, view pursuant to Parish's order. According to plaintiffs, during the September 22, 2002, view arranged by White, Mobley said he had not made a determination that plaintiffs had a reasonable means of access to their property and had never been instructed by Parish to determine whether plaintiffs had such means of access. He further stated that he and the other viewers were instructed only to determine whether plaintiffs were "landlocked," i.e. whether or not the land could be reached without crossing over land owned by an unrelated third party. Mobley further stated he and the other appointed viewers agreed that the plaintiffs' tracts of land in western White County could be reached by crossing over Des Arc Bayou from land owned by Tommy Barnett on the south side of Des Arc Bayou, which land could be reached from highway 31, which was located south of Lake Barnett and Des Arc Bayou. Mobley said that when he signed the report on June 5, 2001, he had not noticed that the report contained the words "reasonable access," and he had no opinion as to whether crossing over the Des Arc Bayou from Tommy Barnett's property to plaintiffs' tracts of

land constituted "reasonable access" because all he and the other viewers were instructed to determine was whether plaintiffs' tracts of land were "landlocked."

On November 27, 2002, plaintiffs filed a motion in the County Court of White County to vacate and set aside the order of dismissal of June 5, 2001, and order of July 2, 2001, denying their motion for new trial or, alternatively, for amended and additional findings.  Plaintiffs argued, pursuant to Rule 60(c), that the viewers' report reflected a critical factual finding as to "reasonable access" that had not been made by the viewers.  *See* Compl., Ex. N.  They also filed a motion requesting Parish's recusal.  *See* Compl.,  Ex. O.

On the same day, plaintiffs filed in White County Circuit Court a Rule 60 motion to vacate and set aside the order of dismissal entered by Judge Mills in White County Circuit Court on October 26, 2001.  On March 8, 2004, plaintiffs filed a supplement to their motion, emphasizing the provisions of Rule 60(k) as the primary basis for their request for equitable relief.  On May 18, 2004, Judge Mills entered an Order denying the motion and supplement to motion to vacate and set aside the October 26, 2001, order which dismissed their appeal as untimely.

On May 25, 2004, plaintiffs filed a supplement to their  motion to vacate and set aside Judge Parish's order of dismissal and order denying a new trial or, alternatively, for amended and additional findings of facts in the county court, pursuant to Ark. R. Civ. P. 60 (c) and (k).  *See* Compl., Ex. P. Plaintiffs argued that defendants Parish and Bell denied them their rights to due process by erroneously, mistakenly, or fraudulently directing the viewers to determine only whether plaintiffs' land was "landlocked" and by erroneously, mistakenly, or fraudulently inserting into the report the words "reasonable access" when no such finding had been made by the appointed viewers.

These actions allegedly caused plaintiffs to suffer substantial economic losses, severe emotional stress, and the loss of good will among their neighbors.

On June 2, 2004, plaintiffs filed a petition for a writ of mandamus with the White County Circuit Court asking the court to direct Parish to rule on their November 27, 2002 motion to vacate and set aside his order of June 5, 2001. The circuit court denied the petition on the same day it was filed. On June 22, 2004, Parish entered a final order denying all pending motions and dismissing the petition with prejudice.

On July 7, 2004, plaintiffs filed a notice of appeal in the circuit court of White County, stating that Parish's Order of June 22, 2004, would be appealed. On July 21, 2004, plaintiffs' counsel filed a Rule 9 affidavit stating that the White County clerk failed to timely prepare, certify, and tender for filing the "second" designated record. *See* Compl., Ex. R; Pls'. Br. in Supp. of Resp. to County Defs.' Mot. to Dismiss Am. Comp., docket entry 91. The "second" designated record was prepared and certified on July 22, 2004.

On December 7, 2004, plaintiffs filed a motion for evidentiary hearing on their appeal, and on December 15, 2004, plaintiffs filed a motion asking Judge Mills to make findings of fact and conclusions of law concerning his decision on appeal. On December 17, 2004, Judge Mills stated in a letter-order that he refused to entertain or rule on the issues raised in plaintiffs' second appeal, finding the unresolved motions are "resolved by the dismissal and affirmation." *See* Compl., Ex. U.

Plaintiffs filed a notice of appeal from Judge Mills' letter-ruling with the Arkansas Supreme Court on January 3, 2005. On June 30, 2005, the Arkansas Supreme Court issued two opinions in companion cases. In Case No. 04-720, the court affirmed Judge Mills' order of June 2, 2003,

denying the motion for writ of mandamus and his order of May 18, 2004, denying the motion to

vacate and set aside.  The Supreme Court held that because Judge Mills dismissed plaintiffs' appeal

as untimely, Mills had no jurisdiction to vacate, set aside, or grant them a new trial.  In Case No. 05-

200, the Arkansas Supreme Court affirmed Judge Mills' letter order of December 2004, holding that

while Mills dismissed the case for the wrong reason, his decision should be affirmed because the

appellants admitted in their briefs that their claims did not fit either subsection (c)(4) or subsection

(k) of Rule 60.

On July 22, 2005, plaintiffs filed the complaint now before the Court.  In Count I, they bring

an independent cause of action for equitable relief based upon their claim that Judge Parish and

attorney Bell made erroneous, mistaken or fraudulent determinations.  In Count II, plaintiffs assert

a federal law claim, alleging that Parish and Bell violated  their rights to due process pursuant to 42

U.S.C. § 1983.  In Count III, plaintiffs assert tort claims against defendants  Parish and Bell; in

Count IV, they ask this Court to hear and decide their petition for a private road pursuant to Ark.

Code Ann. § 27-66-401 *et seq.*; and in Count V, plaintiffs seek attorney's fees and costs.

## Standard of Review

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, all facts alleged in the complaint are assumed to be true.  *Doe v.*

*Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997).  The complaint must be

reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir.

1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set

of facts thereunder which would entitle him or her to relief.  *Hafley v. Lohman,* 90 F.3d 264, 266 (8th

Cir. 1996).  The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint.  *ACLU Foundation v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).  The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief that the plaintiff cannot prove what the complaint asserts.  *Id.  See also Hickman v. Tosco Corp.*, 840 F.2d 564, 565 (8th Cir. 1988); *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982).  Thus, a motion to dismiss should be granted "as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### Discussion

Plaintiffs invoke the jurisdiction of this Court based on federal question, alleging a violation of their constitutional rights pursuant to 42 U.S.C. § 1983.  They seek compensatory and punitive damages.  Because Count II contains plaintiffs' only claim under federal law, the Court will address that count first.

Section 1983 provides that every person who, under color of law, causes another person to be subjected to the deprivation of any right, privilege, or immunity secured by the United States Constitution shall be liable to the injured person for damages, attorney's fees, and injunction. Plaintiffs allege the White County defendants: White County, Arkansas; White County Judge Parish,

individually and in his official capacity; and Attorney Bell, violated their rights to due process under the Fourteenth Amendment to the United States Constitution. The County defendants move for dismissal based, in part, on immunity and failure to state a claim.

State judicial officers enjoy absolute immunity from suits for monetary damages for their judicial acts. *Stump v. Sparkman,* 435 U.S. 349 (1978). The Supreme Court has articulated an extremely limited exception to this general rule: when judges act in the "clear absence of all jurisdiction." *Id.* at 357. *See also Mireles v. Waco,* 502 U.S. 9, 11-12 (1991) (per curiam). This absolute immunity from suit allows judges to fulfill their duties without concern for their own fortunes, which helps to ensure that their duties will be performed impartially and completely. *Forrester v. White,* 484 U.S. 219, 223-24 (1988).

> Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority:
>> 'not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.

*Oliva v. Heller,* 839 F.2d 37, 39 (2nd Cir. 1988) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)(citations omitted)).

The County defendants contend that Parish is entitled to judicial immunity because he was acting in his role as a judge of the county court when he allegedly prepared the report for the viewers to sign and issued the June 5, 2001, and July 2, 2001, orders about which plaintiffs complain. Plaintiffs argue Parish was acting without jurisdiction in the private road proceeding once he

retained Attorney Bell as his advisor.  Plaintiffs assert that a conflict of interest existed which tainted

the entire proceeding and rendered Parish without jurisdiction in the case.  Plaintiffs further contend

Parish forfeited his jurisdiction when he took other actions, such as intentionally misinforming the

viewers as to their duties; accompanying the viewers and participating with them in their

deliberations; and conspiring with Bell to alter the viewers' decision by including a misstatement

of fact.  Plaintiffs argue judicial immunity should not protect " a biased judge who fraudulently and

blatantly undertakes actions on an 'affirmative, knowing and intentional basis' that make it

impossible for a litigant (i.e. the Plaintiffs) to be able to secure a fair and impartial hearing on their

petition for the establishment of a 'private road.'"[1]  Plaintiffs further assert that judicial immunity

does not apply to Bell because he was not a judicial officer or employee of the County.

 The Court finds Judge Parish is entitled to absolute judicial immunity for the actions about

which plaintiffs complain. Judicial immunity applies even when a judge acts maliciously and

corruptly.  A judge loses his immunity from liability for damages in violation of 42 U.S.C. § 1983

only if he acts in clear absence of jurisdiction.  *See Harley v. Oliver,* 539 F.2d 1143 (8th Cir. 1976);

*Wiggins v. Hess,* 531 F.2d 920 (8th Cir. 1976).  Even assuming plaintiffs' allegations are true and

correct, and drawing all reasonable inferences from the pleadings in favor of plaintiffs, the Court

finds the allegations are insufficient to state a claim that Judge Parish was acting in the clear absence

of jurisdiction.

The Court also finds that Attorney Bell, who was retained by the County and performed as a

legal advisor to Parish, is entitled to quasi-judicial immunity. Under the doctrine of  quasi-judicial

immunity, "state officials have absolute immunity from suit when the claims against them arise from

---

[1] Pls.' Br. in Supp. of Resp. to County Defs.' Mot. Dismiss [docket entry 52], at 12.

duties and actions that are 'functionally comparable' to the duties and actions of judges." *Lipin v. Nat'l Union Fire Ins. Co.,* 202 F.Supp.2d 126, 134 (S.D.N.Y.2002) (quoting *Oliva v. Heller,* 839 F.2d 37, 39-40 (2d Cir.1988).   In finding that clerks, like judges, are immune from damage suits that are an integral part of the judicial process, the court in *Sindram v. Suda,* 986 F.2d 1459, 1460-61 (D.C.Cir.1993), stated: "[T]he same policies underlying immunity for judges also justify a similar grant to those performing tasks intimately related to the judicial process."  Courts have concluded that "[s]uits against clerks for damages, like those against judges, are generally not necessary to control unconstitutional conduct in light of the numerous safeguards that are 'built into the judicial process,' especially the 'correctability of error on appeal.'" *Id.   See also  Bettencourt v. Board of Registration,* 904 F.2d 772 (1st Cir. 1990) (members of medical review board entitled to absolute immunity when acting in quasi-judicial capacities in revoking license); *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir), *cert. denied,* 434 U.S. 1077 (1977) (law clerk entitled to absolute immunity for actions based on his participation in the decision of a particular case); *Collins v. McClain,* 207 F.Supp.2d 1260 (D. Kan. 2002) (judicial hearing officer immune because conduct was part of performance of his administrative functions with court);  *DeFerro v. Coco,* 719 F.Supp. 379, 381 (E.D.Pa.1989) (judge's law clerk and family court clerk, acting under court directive, entitled to absolute immunity).

Even if Judge Parish and Attorney Bell were not entitled to immunity, the Court finds plaintiffs fail to state a claim for relief under § 1983.

The due process clause of the Fourteenth Amendment says, in relevant part, that no state shall "deprive any person of life, liberty, or property . . . without due process of law."  U.S. Const. amend. XIV, § 1.  To establish a procedural due process violation under this provision, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without

11

sufficient process. *Clark v. Kansas City Missouri Sch. Dist.,* 375 F.3d 698, 701 (8th Cir. 2004). The

due process clause ensures every individual subject to a deprivation "the opportunity to be heard at

a meaningful time and in a meaningful manner." *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976).

The Fourteenth Amendment guarantees substantive due process, which prevents the government from

engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of

ordered liberty. *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998).

> The due process clause's 'guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm[,] and 'does not transform every tort committed by a state actor into a constitutional violation.' '[T]he test we employ to ascertain a valid substantive due process violation is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'

*Avalos v. City of Glenwood,* 382 F.3d 792, 799 (8th Cir. 1004) (citations and internal quotations

omitted). "Because the conscious-shocking standard is intended to limit substantive due process

liability, it is an issue of law for the judge, not a question of fact for the jury." *Terrell v. Larson,* 396

F.3d 975, 981 (8th Cir. 2005).

Plaintiffs filed their "private road" petition pursuant to Ark. Code Ann. § 27-66-401, which

provides:

> When the lands, dwelling house, or plantation of any owner is so situated as to render it necessary to have a private road from such lands, dwelling house, or plantation to any public road or navigable watercourse over the lands of any other person and the other person refuses to allow that owner the private road, then it shall be the duty of the county court to appoint viewers to lay off the road, provided the owner:
>
> (1) Gives notice to such person twenty (20) days before application to the court;
> (2) Petitions the court;
> (3) Shows necessity for the private road;
> (4) Shows that the person refuses to allow the road; and
> (5) Deposits with the clerk of the court sufficient money to pay all costs and expenses accruing on account of the petition, notice, view, and survey of the private road.

Section 27-66-402 sets forth the duty of viewers:

> (a) Viewers shall take the same oath and shall be governed in all respects as viewers appointed to public roads are governed under this act.
> (b) They shall examine the route proposed for the road and any other route which they may deem proper.
> (c) If they or a majority of them shall be of opinion that a private road is necessary and proper, as prayed in the petition, they shall lay out the road in a manner that produces the least inconvenience to the parties through whose land the road shall pass.
> (d) The viewers shall make a written report to the county court, describing the route of the road and the land through which it shall pass, naming the owner, if known, and the damages sustained by each owner of lands through which the road passes. The damages shall include the value of the land of each owner sought to be appropriated.
> (e) The report shall be recorded on the records of the county court.

Judge Parish appointed three viewers and ordered them to determine "whether the Petitioners are, in fact, landlocked, and if so, the appropriate route for the road to take and the damages caused thereby . . ." Plaintiffs allege this was an erroneous, mistaken, or fraudulent charge under the statute. The viewer's report, signed by the three viewers, states they determined that "[t]he property in question is not landlocked as a reasonable means of access exists . . ." Compl., Ex. J. Plaintiffs allege that County Judge Parish and/or Attorney Bell, in preparing the viewer's report, erroneously, mistakenly, or fraudulently inserted into the report the words "reasonable access," even though the viewers made no such determination.

The Report of Viewers was filed on June 5, 2001. On the same day, Judge Parish dismissed plaintiffs' petition. Compl., Ex. K. On June 15, 2001, plaintiffs moved for a new trial or, alternatively for amended and additional findings of fact regarding the report of the viewers. According to plaintiffs, they wanted the viewers to make additional, and more definitive , underlying findings of fact instead of setting forth only an ultimate finding of fact. On June 19, 2001, after learning that Attorney Bell was a trustee of the AGFC Foundation, plaintiffs filed a statement of undisclosed conflict of interest. On July 2, 2001, Judge Parish denied the motion for new trial or, alternatively

for amended and additional findings of fact, and denied that a conflict of interest existed.  Compl., Ex. M.

White County Circuit Court Judge Mills dismissed plaintiffs' appeal of Judge Parish's June 5, 2001 and July 2, 2001 Orders as untimely.  The Arkansas Court of Appeals and the Arkansas Supreme Court affirmed the decision.

It was while plaintiffs' appeal was pending before the Arkansas Supreme Court that one of the viewers told plaintiffs that the viewers had not made a determination that plaintiffs had reasonable access to their property.  This revelation prompted plaintiffs to file a motion to vacate and set aside Judge Parish's orders of June 5, 2001, and July 2, 2001, and a motion for Parish's recusal.  Plaintiffs also filed a motion to set aside Mills' October 26, 2001, order of dismissal.  Those motions were denied, and plaintiffs eventually appealed the rulings to the Arkansas Supreme Court.

In considering a motion to dismiss for failure to state a claim, the Court must assume that all facts alleged in the complaint are true, and must review the complaint in the light most favorable to the plaintiff.  The motion should not be granted unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief.

To the extent that plaintiffs assert a claim of denial of procedural due process, the Court finds that their allegations fail to state a claim for relief.  Plaintiffs were afforded a procedure to challenge the actions of Judge Parish and Attorney Bell and failed to timely avail themselves of those procedures.  They availed themselves of all the process provided by the legal system but failed to come away with the relief they sought.  Their allegations that Judge Parish and Attorney Bell knowingly, deliberately, and fraudulently asserted into the viewers' report and court orders the phrase "reasonable access" do not state a violation of their constitutional right to procedural due process.

14

To the extent that plaintiffs assert a claim of denial of substantive due process, the Court finds their allegations fail to state a claim for relief.  Viewing the allegations as true,  the Court cannot find that the behavior of Judge Parish and Attorney Bell as a matter of law was so egregious or so outrageous as to shock the contemporary conscience.  Therefore, plaintiffs' claim pursuant to 42 U.S.C. § 1983 must be dismissed.

As a general rule, the Court exercises its discretion under 28 U.S.C. § 1367 and retains jurisdiction over supplemental state law claims when the federal claims are dismissed.  *See* 28 U.S.C § 1367(c).  However, in *Adair v. Burgett,* 210 F.3d 378, 2000 WL 485256 (8th Cir. 2000) (unpublished per curiam), a case which originated in this Court, the Eighth Circuit affirmed the grant of summary judgment on the plaintiff's constitutional claims.  With regard to the state claim, however, the Eighth Circuit, quoting *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir. 1997), stated that "'when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state law claims are dismissed without prejudice to avoid [n]eedless decisions of state law . . . as a matter of comity . . .'" *Adair, supra.*

Although § 1367 and *Birchem* appear to confer discretion on the Court to retain jurisdiction of plaintiffs' state law claims, the language of *Adair* is unequivocal.  Accordingly, based on *Adair,* the Court finds that plaintiffs' remaining state law claims should be dismissed without prejudice.

### Conclusion

IT IS THEREFORE ORDERED that defendants' motions to dismiss [docket entries 5, 12, 35, 37, 88, and 92] are granted.   The motion for extension of time to complete discovery [docket entry 98] is moot.

SO ORDERED this 6th day of January 2006.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

15